IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division
Case No. 1:11-cv-01109-CCB

---

MATTHEW DWOSKIN and RANDI
DWOSKIN, *et al.* on behalf of themselves and
others similarly situated,

               Plaintiffs,

v.

BANK OF AMERICA, N.A.,

               Defendant.

CONSOLIDATED AND AMENDED CLASS
ACTION COMPLAINT

JURY TRIAL DEMANDED

---

## I.  INTRODUCTION

1.  Bank of America, N.A. ("Defendant," the "Bank", or "Bank of America") intentionally marketed its deceptively named No Fee Mortgage Plus ("NFMP") product to borrowers across the country.  The Bank claimed that NFMP borrowers would be charged no fees and would not be required to carry private mortgage insurance.  What the Bank's customers did not know (and what many <u>still</u> do not know) was that Bank of America bought its own lender paid mortgage insurance ("LPMI"), which it placed on the properties of borrowers who purchased the NFMP product without their knowledge or consent -- in direct violation of the Homeowners Protection Act of 1998, 12 U.S.C. § 4901, *et seq*. (the "HPA").

2.  But this is more than just a case of non-disclosure.  This no-fee program was not free to the borrowers; costs were typically folded into the loans imposing higher interest rates on NFMP loans, tricking its mortgagors into unknowingly financing LPMI premium costs over the

life of their loans.

3.      After the Plaintiffs closed on their mortgages, they have watched the market rate for similar loans drop dramatically.  This fluctuation included a sharp drop in the annual percentage rates for certain loans for which Plaintiffs would have otherwise qualified to refinance their mortgages.  However, lenders will generally refuse to refinance homes such as the Plaintiffs' that are burdened by private mortgage insurance, and specifically will not qualify borrowers for the Home Affordable Refinance Program ("HARP") if their home is burdened by private mortgage insurance.  The Bank's improper placement of LPMI without Plaintiffs' knowledge or consent effectively precluded Plaintiffs who would have otherwise qualified to refinance their mortgages from refinancing at lower rates, all to the loss and damage of the Plaintiffs.

4.      The named Plaintiffs bring this suit on behalf of themselves and a class of similarly situated individuals throughout the country to challenge Bank of America's: (a) failure to disclose to its customers the Bank's purchase of LPMI in connection with NFMP loans; (b) failure to disclose that borrowers were actually paying for fees in the form of higher interest rates for these loans; and (c) affirmative misrepresentations to consumers through the marketing and sale of NFMP loans that borrowers would not be burdened with any form of private mortgage insurance.  The Bank's practices deceptive practices in connection with the NFMP product violated federal statutes, several state statutes, and common law.

## II.      JURISDICTION AND VENUE

5.      Plaintiffs invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1331 because this action, in part, arises under the laws of the United States, particularly the Homeowners Protection Act of 1998, 12 U.S.C. § 4901, *et seq*.

6.     In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) and (6) because the aggregate claims of the proposed class members exceed $5 million and at least one named Plaintiff is a resident of a different state than Bank of America.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant is subject to personal jurisdiction in this District and regularly conducts business in this District, and because a substantial part of the unlawful practices are alleged to have been committed in this District.

### III.    PARTIES

8.     Plaintiffs Matthew Dwoskin and Randi Dwoskin (the "Dwoskins") are married and are citizens and residents of Frederick, Maryland.  The Dwoskins entered into a loan with Defendant, Bank of America in Frederick County, Maryland.  The collateral property is located in Frederick County, Maryland.

9.     Plaintiffs Sean Decker and Jennifer Decker (the "Deckers") are married and are citizens and residents of Waldorf, Maryland.  The Deckers entered into a loan with Bank of America in Charles County, Maryland.  The collateral property is located in Charles County, Maryland.

10.     Plaintiff Mark Auguston ("Mr. Auguston") is a citizen and resident of North Carolina. Mr. Auguston entered into a loan with Bank of America in Wake County, North Carolina. The collateral property is located in Wake County.

11.     Plaintiff Teresa D. Butler ("Ms. Butler") is a citizen and resident of Florida.  Ms. Butler entered into a loan with Bank of America in Broward County, Florida.  The collateral property is located in Broward County, Florida.

12.     Plaintiff Linda Campbell is a citizen and resident of North Carolina.  Ms. Campbell entered into a loan with Bank of America in Boone, North Carolina.  The collateral property is located in Bernalillo County, New Mexico.

13.     Plaintiff Donna L. Cuadra ("Ms. Cuadra") and Plaintiff Alfred W. Figley ("Mr. Figley") are married and are citizens and residents of California. Ms. Cuadra and Mr. Figley entered into a loan with Bank of America in Riverside County, California. The collateral property is located in Riverside County.

14.     Plaintiffs Kelly D. Dills and Stefani L. Dills (the "Dills") are married and are citizens and residents of Texas.  The Dills entered into a loan with Bank of America in Collin County, Texas.  The collateral property is located in Collin County.

15.     Plaintiffs Robert S. Kiel and Jeanne B. Kiel (the "Kiels") are married and are citizens and residents of North Carolina. The Kiels entered into a loan with Bank of America in Vance County, North Carolina. The collateral property is located in Vance County.

16.     Plaintiff Joseph Prosser ("Mr. Prosser") is a citizen and resident of Wisconsin. Mr. Prosser entered into a loan with Bank of America in Brown County, Wisconsin. The collateral property is located in Brown County.

17.     Plaintiffs Michael Walsh and Jennifer Walsh (the "Walshes") are married and citizens and residents of New York.  The Walshes entered into a loan with Bank of America in Suffolk County, New York.  The collateral property is located in Suffolk County

18.     Plaintiff Phillip Wertheimer ("Mr. Wertheimer") is a citizen and resident of Washington.  Mr. Walsh entered into a loan with Bank of America in King County, Washington. The collateral property is located in King County.

19.     Plaintiffs JoAnn Woods and Shawn Woods (the "Woods") are married and are citizens and residents of Arizona.  The Woods entered into a loan with Bank of America in Pima County, Arizona.  The collateral property is located in Pima County.

20.     Plaintiff Kerrie Zipprich is a citizen and resident of Illinois.  Ms. Zipprich entered into a loan with Bank of America in Cook County, Illinois.  The collateral property is located in Cook County, Illinois.

21.     Defendant Bank of America, N.A. is a mortgage lender whose national headquarters are based in Charlotte, North Carolina.  The Bank currently does business and maintains offices in this District.  It can sue and be sued in this Court.

## IV.     FACTUAL BACKGROUND

### A.     Bank of America's No Fee Mortgage Plus Loans

22.     Beginning in or around May 2007, Bank of America began to market NFMP loans to the public.  In so doing, the Bank, through its marketing and loan application materials, represented to prospective borrowers, including the Plaintiffs, that it would waive or pay all fees for services or products required by the Bank in order to provide a "no fee" fixed mortgage to qualifying borrowers under the program.

23.     Private mortgage insurance is among the fees and services that Bank of America expressly agreed to waive, specifically promising that the Bank would not require any private mortgage insurance to be placed as an encumbrance on borrowers' collateral property.

24.     At all times relevant to this complaint, Bank of America, like other lenders, typically required a borrower to pay private mortgage insurance when a home's loan-to-value ratio was greater than eighty percent of the collateral property's fair market value.

25.     Borrowers who are required to purchase private mortgage insurance to obtain a

home loan either pay the insurance premiums themselves directly through what is called "borrower paid mortgage insurance" ("BPMI") or indirectly through "lender paid mortgage insurance" ("LPMI").

26.     When a borrower is required to purchase BPMI, it is done at closing and only with full disclosure to the borrower, both as to cost and as to the existence of a mortgage insurance encumbrance on the borrower's property.  The borrower independently pays the mortgage insurance premiums to the mortgage insurer, either directly or by making payment to the loan servicer, who then pays the insurance premium on the borrower's behalf.

27.     When the lender obtains LPMI, the lender usually pays a single premium at or after loan closing with full disclosure to the borrower, and then passes that cost to the borrower by charging the borrower a higher interest rate. *See* S. REP. NO. 105-129, at 5 (1997) ("LPMI is a mortgage insurance product that the consumer pays for through a higher interest rate on his or her loan…Payments for LPMI are built into the cost of the loan and capitalized over the life of the loan.").

28.     On or about May 12, 2007, Floyd Robinson, president of consumer real estate for Bank of America, described the NFMP in a *Washington Post* newspaper article as "a true no-fee mortgage product."[1]

29.     Mr. Robinson specifically told the *Post* that NFMP loans did not include any private mortgage insurance because of the Bank's vast reserves, stating, "we are the investor, we assume the risk."  The article further explained, "the bank is self-insuring the risk and charging customers nothing for the service."  This public statement was not and is not true, constituting a false misrepresentation upon the consumers.

---

[1] Kenneth Harney, *A 'No-Fee' Mortgage That Might Be for Real*, WASH. POST, May 12, 2007, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2007/05/11/AR2007051100821_pf.html.

30.     Bank of America's product was not, as advertised, a true "no fee" product.  In fact, the Bank simply passed closing fees on to borrowers by charging a higher interest rate for the NFMP product.

**B.       Plaintiffs Obtained Mortgage Loans Through the NFMP Program**

31.     Each Plaintiff applied for a residential loan with Bank of America to purchase a private residence (collectively, the "Properties") and was approved for a loan under the NFMP program.   The Bank prepared and sent to each Plaintiff a Real Estate Loan Approval / Commitment (the "NFMP Approval").

32.     Under the terms of the NFMP Approval, Bank of America represented to the Plaintiffs, "[f]or customers who qualify, Bank of America will waive or pay all fees for services or products required by Bank of America in order to grant credit to the customer for the purchase of a primary residence."

33.     On the NFMP Approval, the Bank also provided written confirmation of its approval, including any applicable closing conditions.

34.     Each Plaintiff agreed to and accepted the NFMP Approval.

35.     Each Plaintiff closed on the approved NFMP loan with Bank of America by executing a mortgage in favor of and payable to the Bank under the following applicable terms (collectively, the "NFMP Loans"):

    a.      On or about December 9, 2008, Plaintiffs Matthew Dwoskin and Randi Dwoskin closed on a NFMP loan with Bank of America in the amount of Five Hundred Thousand Five Hundred Sixty Four Dollars and No/100 Dollars ($500,564.00) at a fixed annual percentage rate of 6.375 percent over a term of thirty years to purchase a private residence at 9104

Belvedere Drive, Frederick, Maryland 21704.

b.     On or about September 27, 2007, Plaintiffs Sean Decker and Jennifer Decker closed on a NFMP loan with Bank of America in the amount of Two Hundred and Seventy Five Thousand and No/100 Dollars ($275,000.00) at a fixed annual percentage rate of 6.25 percent over a term of thirty years to purchase a private residence at 2294 Imperial Court, Waldorf, Maryland 20602.

c.     On or about March 14, 2008, Plaintiff Mark Auguston closed on a NFMP loan with Bank of America in the amount of Two Hundred Two Thousand Five Hundred Dollars and No/100 Dollars ($202,500.00) at a fixed annual percentage rate of 6.5 percent over a term of thirty years to purchase a private residence at 101 Leeward Court, Cary, North Carolina 27511.

d.     On or about July 30, 2008, Plaintiff Teresa D. Butler closed on a NFMP loan with Bank of America in the amount of One Hundred Sixty Nine Thousand Two Hundred Dollars and No/100 Dollars ($169,200.00) at a fixed annual percentage rate of 6.5 percent over a term of thirty years to purchase a private residence at 11040 N.W. 20th Court, Sunrise, Florida 33322.

e.     On or about April 1, 2008, Plaintiffs Donna L. Cuadra and Alfred W. Figley closed on a NFMP loan with Bank of America in the amount of Four Hundred Thousand Dollars and No/100 Dollars ($400,000.00) at a fixed annual percentage rate of 6.00 percent over a term of thirty years to purchase a private residence at 2958 Corydon Avenue, Norco, California

92860.

f.     On or about June 27, 2007, Plaintiff Linda Campbell closed on a NFMP loan with Bank of America in the amount of Two Hundred and Eight Thousand and No/100 Dollars ($208,000.00) at a fixed annual percentage rate of 6.125 percent to purchase a private residence at 1709 Princeton Drive, SE, Albuquerque NM 87106-3113.

g.     On or about October 15, 2007, Plaintiffs Kelly and Stefani Dills closed on a NFMP loan with Bank of America in the amount of Three Hundred and Fifty Six Thousand Two Hundred Fifty and No/100 Dollars ($356,250.00) at a fixed annual percentage rate of 6.5 percent over a term of thirty years to purchase a private residence at 1232 Comanche Drive, Allen, Texas 75013.

h.     On or about August 29, 2008, Plaintiffs Robert S. Kiel and Jeanne B. Kiel (the "Kiels") closed on a NFMP loan with Bank of America in the amount of One Hundred Fifty Five Thousand Seven Hundred Dollars and No/100 Dollars ($155,700.00) at a fixed annual percentage rate of 6.875 percent over a term of thirty years to purchase a private residence at 203 Red Bud Circle, Henderson, North Carolina.

i.     On or about May 16, 2008, Plaintiff Joseph Prosser closed on a NFMP loan with Bank of America in the amount of One Hundred Thirty Two Thousand Fifty Dollars and No/100 Dollars ($132,050.00) at a fixed annual percentage rate of 6.375 percent over a term of thirty years to purchase a private residence at 203 Red Bud Circle, Henderson, North

Carolina 27536.

j.      On or about June 5, 2008, Plaintiffs Michael Walsh and Jennifer Walsh closed on a NFMP loan with Bank of America in the amount of Four Hundred Seventeen Thousand Dollars and No/100 Dollars ($417,000.00) at a fixed annual percentage rate of 6.125 percent over a term of thirty years to purchase a private residence at 27 Furwood Drive, East Northport, New York 11731.

k.      On or about June 27, 2008, Plaintiff Phillip Wertheimer closed on a NFMP loan with Bank of America in the amount of Four Hundred and Five Thousand Dollars and No/100 Dollars ($405,000.00) at a fixed annual percentage rate of 6.5 percent over a term of thirty years to purchase a private residence at 45902 Lake Wilderness Country Dr, Maple Valley, Washington 98038.

l.      On or about July 2, 2007, Plaintiffs JoAnn Woods and Shawn Woods closed on a NFMP loan with Bank of America in the amount of Four Hundred and Seventeen Thousand Dollars and No/100 Dollars ($417,000.00) at a fixed annual percentage rate of 6.375 percent over a term of thirty years to purchase a private residence at 14520 East Desert Plume Court, Vail, Arizona 85641.

m.      On or about June 24, 2008, Plaintiff Kerrie Zipprich closed on a NFMP loan with Bank of America in the amount of One Hundred and Seventy Five Thousand Seven Hundred and Fifty and No/100 Dollars ($175,750.00), at a fixed annual percentage rate of 6.125 percent over a

10

term of thirty years to purchase a private residence at 555 West Cornelia Avenue, Unit 1706, Chicago, Illinois 60657.

36.     Bank of America required the purchase of LPMI in connection with the NFMP Loans, adding the LPMI to the loan after closing, but did not disclose this requirement or the actual placement of the LPMI to the Plaintiffs at closing, at placement, or any time.

37.     Without the Plaintiffs' knowledge or permission, Bank of America purchased an LPMI policy on each of the Plaintiffs' Properties, thereby creating a burden or encumbrance on each of the Plaintiffs' Properties, in violation of the Bank's material promises to the Plaintiffs, all to the damage and detriment of the Plaintiffs and to the Bank's benefit.

38.     The increased interest rate charged to the Plaintiffs subsidized the Bank's waiver of fees and purchase of LPMI.

39.     Pursuant to 12 U.S.C. § 4905(c), before Bank of America could burden the NFMP Loans with LPMI, the Bank had an obligation (i) to provide the Plaintiffs with a written notice containing specifically mandated language, and (ii) to provide said written notice to the Plaintiffs on or before the date on which it made its mortgage commitment to the Plaintiffs, and (iii) to disclose to the Plaintiffs, at or before closing, its intent to place LPMI on their home, including the cost of the same, and (iv) to disclose to the Plaintiffs its post-closing encumbering of the Plaintiffs' Properties by its subsequent placement of LPMI as an encumbrance on the Plaintiffs' Properties; all to the Plaintiffs' damage.

40.     Bank of America did not provide the Plaintiffs with the written disclosures required by 12 U.S.C. § 4905(c) prior to the NFMP Loans closing, or at any other time.

41.     The Plaintiffs had no reason to know, had no way of knowing, and in fact did not know at any time prior to or at the closings on the NFMP Loans that the Bank intended to burden

11

their Properties with private mortgage insurance, whether paid by the borrower or the lender. The Bank's misrepresentations, which continued through the closings on the NFMP Loans when the Plaintiffs were presented with HUD-1 settlement statements that showed no evidence that the Bank had placed LPMI on their Properties, said fact having been materially hidden or omitted from the disclosures made at closing.

## C.     **Bank of America's Deceptive Acts Harmed Plaintiffs**

42.     After they closed on the NFMP Mortgages, the Plaintiffs, wanting to take advantage of a drop in interest rates for loans of the size they required, and seeking to save themselves monthly mortgage expense, searched for a refinance mortgage, only to find out that refinance options were not available because their NFMP Loans were encumbered by LPMI.

### i.   **Home Affordable Refinance Program ("HARP")**

43.     Borrowers who attempted to refinance their NFMP Loans under the Home Affordable Refinance Program ("HARP") through Bank of America learned from the Bank for the first time that their NFMP Loans were encumbered by LPMI.

44.     Because of the existence of the previously undisclosed LMPI as an encumbrance on their Properties, NFMP borrowers did not qualify for the financial benefits that would otherwise have been available to them under HARP, to their damage.

45.     These Plaintiffs otherwise were eligible for the HARP program because:

        a.     They are the owners of a single family home;

        b.     Their NFMP Loans are guaranteed by Fannie Mae or Freddie Mac;

        c.     At the time they applied to refinance their NFMP Loans with Bank of America, they were current on their mortgage payments;

        d.     The amount owed on their NFMP Loans did not exceed 125 percent of the then fair market value of their Properties;

        e.     They had the ability to pay the new and lower mortgage payments; and

        f.     The refinance would have improved the long term affordability and

stability of the loan.

46.     These Plaintiffs would have benefitted financially from the HARP program. However, because in the time before this lawsuit was filed Bank of America would not cancel the LPMI currently burdening their NFMP Loans, these Plaintiffs were unable to refinance their NFMP Loans with Bank of America, were unable to obtain a HARP loan, and will have greatly increased difficulty in finding a loan with any lender under current market conditions.

47.     Lenders will generally refuse to refinance homes like the Plaintiffs' Properties that are burdened by private mortgage insurance, and specifically will not qualify borrowers for the HARP program if their home is burdened by private mortgage insurance.

48.     At the time before the filing of this lawsuit Bank of America itself had a general policy of refusing to refinance homes that are burdened by private mortgage insurance, and specifically will not qualify borrowers for the HARP program if their home is burdened by private mortgage insurance, notwithstanding the fact that Bank of America itself took the concealed action to burden and encumber the Plaintiffs' Properties with LPMI to the Bank's sole benefit and the detriment of Plaintiffs.

49.     Although the Bank has often initially refused to admit to borrowers who have attempted to refinance their loans that it even placed LPMI on their mortgages, once it was forced to acknowledge as much, Bank employees have conceded that the Bank had folded the cost of the LPMI into interest rates charged to borrowers.

## V.      CLASS ALLEGATIONS

50.     Plaintiffs repeat and re-allege every allegation above as if fully set forth herein.

51.     This class action is brought by Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class of all persons similarly situated.

52.     The proposed class is defined as:

All persons in the United States who acquired home loans from or through Bank of America, N.A. under the No Fee Mortgage Plus program (the "National Class") as to whose loans LPMI was placed (the "HPA Class")

63.   A proposed subclass for purposes of seeking relief from unjust enrichment is defined as:

All persons who acquired home loans from or through Bank of America in the states of Arizona, California, Florida, Illinois, Maryland, New Mexico, New York, North Carolina, Texas, Washington, and Wisconsin as to whose loans LPMI was placed (the "Unjust Enrichment Subclass") (*see* Fourth Claim for Relief, *infra*).

64.   A proposed subclass for purposes of seeking relief under state consumer protection statutes is defined as:

All persons who acquired home loans from or through Bank of America in the states of Arizona, California, Illinois, Maryland, New Mexico, New York, North Carolina, Washington and Wisconsin as to whose loans LPMI was placed (the "State Consumer Law Subclasses") (*see* Fifth Claim for Relief, *infra*).

53.     Plaintiffs reserve the right to modify or amend the definition of the Proposed Classes.

54.     Excluded from the Classes are Defendant and its subsidiaries and affiliates' current or former employees, officers, directors, agents, representatives and their family members and members of this Court and its staff.

55.     The Classes  meet the prerequisites of Rule 23(a) to bring this action on behalf of the Class because:

      a.     *Numerosity* – Plaintiffs do not know the exact size of the Classes or the identities of the Class members because such information is in the exclusive control of Defendant.   Plaintiffs believe that the Classes encompass many thousands of individuals whose identities can be readily ascertained from Defendant's books and records.   Although the exact number of Class members is unknown at this time, NFMP was a nationally marketed program that the Bank sold to borrowers for more than two years.   In so doing, as it described in a press release, the Bank

made NFMP loans available through "nearly 6,000 banking centers, as well as through its phone and online sales channels, including bankofamerica.com[.]"[2] Therefore, the Classes are so numerous that joinder of all members is impracticable.

b.    *Commonality* – All members of the Classes have been subject to and affected by the same conduct.  Plaintiffs' claims are based on standard form contracts and marketing materials.  Questions of law and fact are common to the Classes, and predominate over any questions affecting only individual members of the Classes.  These questions include, but are not limited to the following:

    i.     the nature, scope, and operation of Defendant's representations to prospective NFMP loan applicants concerning the existence and necessity of private mortgage insurance;

    ii.    whether NFMP borrowers were charged higher interest rates than similarly situated, non-NFMP borrowers;

    iii.   whether Defendant's failure to disclose the existence of private mortgage insurance and affirmative representations made both orally and through its written materials amounts to fraud;

    iv.    whether Defendant's failure to disclose the existence of private mortgage insurance and affirmative representations made both orally and through its written materials amount to negligent misrepresentations;

    v.     whether Defendant violated § 4905 of the Homeowners Protection Act by failing to give Plaintiffs and the Classes the statutorily-required notice, and in fact, deliberately concealed the existence of the LPMI from Plaintiffs and the Classes; and

    vi.    whether the Court can award damages and enter injunctive relief.

c.    *Typicality* – The claims of the named Plaintiffs are typical of the claims of the Classes and do not conflict with the interests of any other members of the Classes in that both the Plaintiffs and the other members of the Classes were subject to the same conduct, signed the same form agreements, and were induced into acquiring loans that are burdened by private mortgage insurance without their knowledge.

---

[2] *Available at* http://mediaroom.bankofamerica.com/phoenix.zhtml?c=234503&p=irol-newsArticle_print&ID=1389825&highlight= (visited May 21, 2012).

d.    *Adequacy* – The named Plaintiffs will fairly and adequately represent the interests of the Classes.  Plaintiffs are committed to the vigorous prosecution of the Class claims and have retained attorneys who are experienced in complex class litigation and consumer class actions.

56.    A class action is superior to other available methods for the efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any serious problems of manageability.

57.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes.  In addition, individual adjudications with respect to individual members of the Classes would, as a practical matter, contravene the interest of the other members not parties to the adjudications and/or would substantially impair or impede their ability to protect their interests.

58.    This putative class action meets both the requirements of Fed. R. Civ. P. 23(b)(2) and Fed. R. Civ. P. 23(b)(3).

59.    The Defendant has acted or refused to act on grounds that apply generally to the Classes so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

60.    Based on the potential size of the Classes and Plaintiffs' own assessment of damages, Plaintiffs believe that the amount in controversy exceeds $5 million.

## VI.    CLAIMS FOR RELIEF

### CLAIM I

### Violation of the Homeowners Protection Act of 1998, 12 U.S.C. § 4901, *et seq.*
### (On Behalf of the National Class)

61.    Plaintiffs repeat and re-allege every allegation above as if set forth fully herein.

62.    Plaintiffs bring this claim on their own behalf and on behalf of each member of the National Class described above.

63.     Plaintiffs bring this claim pursuant to the Homeowners Protection Act of 1998, 12

U.S.C. § 4901, *et seq.* (the "**HPA**"), which applies to the residential mortgage transactions at

issue in this case.

64.     Section 4905 establishes the following notice requirements for lenders when

LPMI is required in connection with a residential mortgage transaction:

> (1) not later than the date on which a loan commitment is made for the residential mortgage transaction, the prospective mortgagee shall provide to the prospective mortgagor a written notice
>
>> (A) that lender paid mortgage insurance differs from borrower paid mortgage insurance, in that lender paid mortgage insurance may not be canceled by the mortgagor, while borrower paid mortgage insurance could be cancelable by the mortgagor in accordance with section 4902(a) of this title, and could automatically terminate on the termination date in accordance with section 4902(b) of this title;
>>
>> (B) that lender paid mortgage insurance--(i) usually results in a residential mortgage having a higher interest rate than it would in the case of borrower paid mortgage insurance; and (ii) terminates only when the residential mortgage is refinanced under the meaning given such term in the regulations issued by the Board of Governors of the Federal Reserve System to carry out the Truth in Lending Act (15 U.S.C. 1601 *et seq.*), paid off, or otherwise terminated; and
>>
>> (C) that lender paid mortgage insurance and borrower paid mortgage insurance both have benefits and disadvantages, including a generic analysis of the differing costs and benefits of a residential mortgage in the case of lender paid mortgage insurance versus borrower paid mortgage insurance over a 10-year period, assuming prevailing interest and property appreciation rates;
>>
>> (D) that lender paid mortgage insurance may be tax-deductible for purposes of Federal income taxes, if the mortgagor itemizes expenses for that purpose; and not later than 30 days after the termination date that would apply in the case of borrower paid mortgage insurance, the servicer shall provide to the mortgagor a written notice indicating that the mortgagor may wish to review financing options that could eliminate the requirement for private mortgage insurance in connection with the residential mortgage transaction.

65.     Bank of America violated § 4905 by failing to give Plaintiffs and the National Class the statutorily-required notice, and in fact, deliberately concealing the existence of the LPMI from the Plaintiffs and the National Class.

66.     The HPA imposes civil liability on "any servicer, mortgagee, or mortgage insurer that violates" § 4905, granting individuals a private right of action to recover "any actual damages sustained by the mortgagor as a result of the violation, including interest (at a rate determined by the court) on the amount of actual damages, accruing from the date on which the violation commences," plus statutory damages of up to $2,000, plus the costs of the action and reasonable attorney fees.

67.     The members of the National Class were harmed by the Bank's violation of the HPA because they were charged higher interest rates, unknowingly financing the cost of the undisclosed LMPI, and because they were unable to refinance to take advantage of lower mortgage rates by refinancing.

68.     Bank of America is liable to the Plaintiffs and the National Class for actual and statutory damages because of its violations of the HPA.

**CLAIM II**
**Unjust Enrichment**
**(On Behalf of the Unjust Enrichment Class)**

79.     Plaintiffs repeat and re-allege every allegation above as if fully set forth herein.

80.     Bank of America was unjustly enriched by charging higher interest rates to NFMP customers than were charged to other Bank customers.

81.      The Bank was unjustly enriched by selling loans that it would not otherwise have sold because of its deceptive marketing of the NFMP program.

82.     Bank of America was unjustly enriched because it benefited from the higher interest rates of clients who were unable to refinance mortgages because of the hidden LPMI on their homes.

83.     Bank of America's unjust enrichment directly resulted from the conduct alleged in this complaint.

84.     Bank of America appreciated the benefit conferred on it by its unjust enrichment.

85.     A constructive trust should be imposed on all wrongful or inequitable sums received by Bank of America through its unjust enrichment.

86.     Plaintiffs and the National Class have no adequate remedy at law.

**CLAIM III**
**Violation of State Unfair Trade Practices Laws**
**(On Behalf of the State Subclasses)**

87.     Plaintiffs repeat and re-allege every allegation above as if fully set forth herein. This claim is asserted on behalf of the members of each State Subclass under their respective consumer protection statutes.

88.     The Bank's acts and practices described herein were unlawful, unfair, and materially misleading or deceptive.

89.     The Bank's conduct described herein was in or affecting commerce.

90.     The Bank's conduct described herein was directed toward residential home loan consumers across the country and harmed numerous consumers who obtained NFMP home loans from the Bank.

91.     By engaging in the conduct described herein, Defendant has violated the Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521 *et seq.*

92.     By engaging in the conduct described herein, Defendant has violated the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

93.     By engaging in the conduct described herein, Defendant has violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*

94.     By engaging in the conduct described herein, Defendant has violated the Maryland Consumer Protection Act, Md. Com. Law Code Ann §§ 13-101 *et seq.*

95.     By engaging in the conduct described herein, Defendant has violated the New Mexico Unfair Practices Act, N.M. Stat. §§ 57-12-1 *et seq.*

96.     By engaging in the conduct described herein, Defendant has violated N.Y. Gen. Bus. Law §§ 349 *et seq.*By engaging in the conduct described herein, Defendant has violated N.C. Gen. Stat. §§ 75-1.1 *et seq.*

97.     By engaging in the conduct described herein, Defendant has violated the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 *et seq.*

98.     By engaging in the conduct described herein, Defendant has violated Wis. Stat. § 100.18.

99.     As a result of the Bank's conduct alleged herein, Plaintiffs have suffered actual injury, including monetary damages in an amount to be proved at trial.

100.     To remedy these violations of these consumer protection statutes, the Plaintiffs and the State Subclasses are entitled to, *inter alia*, damages, declaratory relief, injunctive relief, costs of this action (including, but not limited to, attorneys' fees), and for such further and other relief which the Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a.      Certify this case as a class action and appoint the named Plaintiffs to be class representatives and their counsel to be class counsel;

b.      Enter a judgment declaring the acts and practices of Defendant complained of herein to constitute a violation of the HPA; fraud, or in the alternative, negligent misrepresentation; and unjust enrichment;

c.      Order Defendant to adopt and enforce a policy that requires appropriate training of their employees and agents regarding their obligations to disclose the existence of private mortgage insurance;

d.      Enter an injunction requiring Bank of America to cancel any LMPI placed in connection with the NFMP program;

e.      Award compensatory and punitive damages pursuant to applicable statutes and the common law;

f.      Award reasonable attorney's fees as permitted by statute;

g.      Award Plaintiffs the costs of this action; and

h.      Award and grant such other and further relief as this Court finds is necessary and proper.


## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.


Dated:  May 25, 2012

Respectfully submitted,

By:___/s/Tracy Reichman Kalik_____
Richard D. Heideman (No. 06368)
Tracy Reichman Kalik (No.13224)
HEIDEMAN NUDELMAN & KALIK, P.C.
1146 19th Street, N.W.
Fifth Floor
Washington, DC 20036
Telephone: 202-463-1818
Telefax: 202-463-2999

Mitchell Alkon, (No.24079)
PASTERNAK & FIDIS PC
7735 Old Georgetown Road Ste 1100
Bethesda, Maryland 20814
Telephone: 301-656-8850
Telefax:   301-656-6068

Daniel T. Blue, Jr.
Dhamian A. Blue
BLUE STEPHENS & FELLERS LLP
205 Fayetteville Street, Suite 300
Post Office Box 1730
Raleigh, North Carolina 27602
danblue@bluestephens.com
dab@bluestephens.com
Telephone:  (919) 833-1931
Facsimile:  (919) 833-8009
NC State Bar No. 5510 (DTB)
NC State Bar No. 31405 (DAB)
*Admitted pro hac vice*

James C. White
Michelle M. Walker
LAW OFFICE OF JAMES C. WHITE, P.C..
4819 Emperor Blvd. Suite 400, Durham, NC
P.O. Box 16103
Chapel Hill, NC 27516
jimwhite@jcwhitelaw.com
mwalker@jcwhitelaw.com
Telephone: (919) 313-4636
Facsimile:  (919) 246-9113
NC State Bar No. 31859
NC State Bar No. 41664
*Admitted pro hac vice*

Leonard B. Simon
LAW OFFICES OF LEONARD B. SIMON
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 338-4549
LenS@rgrdlaw.com
*Admitted pro hac vice*

*Attorneys for Plaintiffs*