**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | : | |
| DWOSKIN *et al.* | : | |
| | : | |
| v. | : | Civil No. CCB-11-1109 |
| | : | |
| BANK OF AMERICA, N.A. | : | |
| | : | |
| | : | |

**MEMORANDUM**

The plaintiffs are a putative class of homeowners who obtained a "no fee" fixed-rate

mortgage through Bank of America, N.A. ("the Bank") and who allege that their mortgages were

not, in fact, "no fee" because the Bank took out lender-paid mortgage insurance on their loans,

covering the cost with a higher interest rate and limiting their ability to refinance their loans on

more favorable terms at a later date. The plaintiffs' complaint originally included allegations

only related to Matthew and Randi Dwoskin, two Maryland homeowners, and the court denied

the Bank's motion to dismiss the original complaint on March 26, 2012. *See Dwoskin v. Bank of*

*America, N.A.*, 850 F. Supp. 2d 557 (D. Md. 2012). The plaintiffs then filed an amended

complaint which added allegations concerning homeowners from eleven states who all sought

and obtained "no fee" mortgages from the Bank and who now allege identical violations of the

Homeowners Protection Act ("HPA"), state consumer protection acts, and unjust enrichment

against the Bank. The Bank has filed a motion seeking an amended order permitting an

interlocutory appeal of this court's ruling that the HPA does not preempt the plaintiffs' state law

claims (ECF No. 51) and a motion to dismiss the plaintiffs' amended complaint, arguing that

facts specific to the Dwoskins are not present in the amended complaint and were essential for

1

the claims to survive federal notice-pleading standards (ECF No. 69). The Bank also argues that

the amended complaint does not satisfy Rule 12(b)(6) standards for the additional state-law

claims. For the reasons set forth below, the Bank's motion to amend the court's March 26, 2012,

order will be denied and its motion to dismiss will be granted in part and denied in part.[1]

## BACKGROUND

The plaintiffs are homeowners who obtained what were called "no fee" mortgages from

the Bank on properties in Arizona, California, Florida, Illinois, Maryland, North Carolina, New

Mexico, New York, Texas, Washington, and Wisconsin. (Am. Compl., ECF No. 52, ¶¶ 8-20,

35.)

The Bank began marketing its "no fee" loans in or around May 2007. (*Id.* ¶ 22). In its

loan approval documents, the Bank represented that it would "waive or pay all fees for services

or products required by the Bank in order to grant credit to the customer for the purchase of a

primary residence." (*Id.* ¶ 32; *see also, e.g.*, Dwoskin Loan Approval, ECF No. 67-2, at 33). The

Bank never disclosed to the plaintiffs that it would or that it did place mortgage insurance on

their properties. (*Id.* ¶¶ 23, 36-37, 41).

When a mortgage loan is for more than 80% of a home's value, borrowers typically are

required to obtain private mortgage insurance ("PMI") directly through a private mortgage

insurance company or indirectly through lender-paid mortgage insurance ("LPMI"). (*Id.* ¶ 24-

25). If borrowers purchase PMI, they do so at closing and independently pay insurance

---

[1] The Bank's motion to dismiss will be denied almost in its entirety, but the plaintiffs admit that certain individual claims must be dismissed. Accordingly, the state law claims brought by plaintiffs Augustson and Kiels (North Carolina) and Prosser (Wisconsin) will be dismissed because they were previously dismissed with prejudice in federal court. *See Augustson v. Bank of America, N.A.*, 864 F. Supp. 2d 422 (E.D.N.C. 2012). Furthermore, the plaintiffs admit that the

premiums to the mortgage insurance company. (*Id.*¶ 26). If a lender provides LPMI, the lender

pays the cost of mortgage insurance and typically passes on that cost to the borrowers by

charging a higher interest rate on the loan. (*Id.* ¶ 27). In its "no fee" program, the Bank expressly

promised it "would not require any private mortgage insurance to be placed as an encumbrance

on borrowers' collateral property." (*Id.* ¶ 23). Indeed, the president of consumer real estate for

the Bank told the Washington Post in May 2007 that the Bank's "no fee" loans did not include

any private mortgage insurance because of the Bank's vast reserves and stated: "We are the

investor, we assume the risk." (*Id.* ¶ 29). The article explained that the Bank was "self-insuring

the risk and charging customers nothing for the service." (*Id.*). The plaintiffs claim these

statements were untrue and that the Bank hid the fees involved in the "no fee" mortgages, in part

by charging borrowers higher interest rates and thus subsidizing the cost of the LPMI. (*Id.* ¶ 30,

38).

   Between 2007 and 2008, the plaintiffs applied for and obtained residential loans with the

Bank through the "no fee" program. (*Id.* ¶ 35). As illustrated by the exhibits attached to the

Bank's Answer, none of the documentation the plaintiffs received in the loan approval process

stated that the Bank had placed LPMI on the property and the Bank provided no written

disclosures of any intent to place LPMI on the property. (ECF Nos. 67-2–13). The plaintiffs

allege the Bank failed to disclose its placement of LPMI on the loans at closing or any other

time. (Am. Compl. ¶¶ 36, 41).

   Finally, the plaintiffs state that they "wanted to take advantage of a drop in interest rates

for loans of the size they required," but were unable to because of the LPMI the Bank placed on

---

Woods' Arizona Consumer Fraud Act claim is barred, and that claim also will be dismissed.

their mortgages. (*Id.* ¶ 42). In particular, they claim they could have benefitted from the Home Affordable Refinance Program ("HARP"), but because their loans were burdened with LPMI, they were unable to obtain a HARP loan, or other refinancing from the Bank or other lenders, at least before the lawsuit was filed. (*Id.* ¶¶ 46, 48). The plaintiffs intend to seek nationwide class certification on claims that the Bank violated the HPA and certification of subclasses alleging violations of state consumer protection laws and that the Bank was unjustly enriched by the plaintiffs' payment of the cost of LPMI, folded into their interest rates. They also are seeking an injunction cancelling any LPMI placed on their loans.

### ANALYSIS

When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(internal citations and alterations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim . . . However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (quotations and citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Setting aside the specific issues addressed below, the plaintiffs have met this standard. They allege that (1) they sought and obtained what were marketed as "no fee" loans; (2) their loan approval stated that the Bank would waive or cover all fees for services needed to obtain the loan; (3) federal law requires disclosures when a lender requires mortgage insurance on a loan; (4) the Bank represented to the plaintiffs that their "no fee" loans would be unencumbered with mortgage insurance; (5) the Bank, without notifying the plaintiffs, placed mortgage insurance on their loans which limited their ability to refinance; and (6) the Bank folded the cost of the LPMI into the plaintiffs' interest rates. These factual allegations, taken as true, are specific and support plausible claims that the Bank misled the plaintiffs as to the true cost of their mortgages and violated federal law by surreptitiously requiring LPMI on them. These allegations are partially corroborated by the plaintiffs' loan documents themselves. Although the Bank attempts to litigate the merits of the plaintiffs' claims, whether these allegations can be fully proven is not a question that should be addressed in a motion under Rule 12(b)(6). The plaintiffs have met federal pleading standards because their amended complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## I.   HPA

In its motion to dismiss and motion seeking an interlocutory appeal, the Bank attempts to
re-raise two arguments decided on its previous motion to dismiss. First, in light of *Augustson*,
864 F. Supp. 2d 422, the Bank seeks, under 28 U.S.C. § 1292(b), an amended order certifying an
immediate appeal of this court's holding that § 4908 of the HPA, which preempts provisions of
state law "relating to" the mortgage insurance requirements of the HPA, does not preempt the
plaintiffs' state law claims. As discussed in detail in the court's earlier opinion, *Dwoskin*, 850 F.
Supp. 2d at 566-69, the Bank has not demonstrated that (1) Congress intended the HPA to
preempt laws of general applicability that cover lenders' marketing of products to consumers; (2)
the HPA preempts a "field" that includes all statements made by lenders regarding mortgage
products, even if they are false, deceptive, or misleading; or (3) state laws that require lenders
not to lie or mislead consumers seeking mortgages somehow conflict with the HPA's mortgage
insurance disclosure requirements. *See DeCohen v. Capital One, N.A.*, --- F.3d ---, 2012 WL
6685767, at *5 (4th Cir. Dec. 26, 2012) (describing the three types of federal preemption).

Nor has the Bank demonstrated that "exceptional circumstances . . . justify a departure
from the basic policy of postponing appellate review until after the entry of a final judgment."
*Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978); *see also Myles v. Laffitte*, 881 F.2d
125, 127 (4th Cir. 1989) ("[Section] 1292(b) should be used sparingly and thus its requirements
must be strictly construed."). In particular, setting aside the other requirements of § 1292(b),
because the plaintiffs' federal HPA claim will continue irrespective of the plaintiffs' state law

claims, an immediate appeal would not "materially advance the termination of the litigation."

Second, the Bank reargues its position that the plaintiffs have not stated a valid claim under the HPA itself. The court's analysis in its previous memorandum opinion concerning the plaintiffs' HPA claim applies equally to the new plaintiffs named in the amended complaint. As stated in detail there, the plaintiffs plausibly state a claim for a violation of the HPA, which mandates specific disclosures when a lender "requires" LPMI on a mortgage, *see* 12 U.S.C. § 4901, because the Bank never disclosed an intention to place LPMI on the plaintiffs' loans but then did, in fact, place LPMI on them. *See Dwoskin*, 850 F. Supp. at 563-566. Whether the Bank actually had an intention to place LPMI on the loans all along, and whether the Bank charged higher interest rates to account for this when it entered into the loan agreements with the plaintiffs, remain open factual questions. But, the amended complaint does not state a less plausible claim than the original complaint. The amended complaint, like the first one, can be read to allege that the Bank failed to disclose its intention to place LPMI on the "no fee" loans, or the fact that it did so after closing, and "the fact that the LPMI was not taken out until after the [plaintiffs] closed on their loan does not defeat an argument that LPMI was required on their loan." *Id.* at 566 (citing *O'Connor v. Wells Fargo Home Mortg., Inc.*, 2011 WL 248006, at *4 (N.D. Ga. Jan. 24, 2011)) Disclosure may be required under the HPA even if LPMI is placed on a mortgage after a loan commitment is made and the Bank had no prior intention to do so. *See Augustson*, 864 F. Supp. 2d at 430.

## II.  State Consumer Protection Laws

Furthermore, the plaintiffs' California, Illinois, Maryland, New Mexico, New York, and Washington state consumer protection law claims will not be dismissed. The crux of the Bank's

argument, as it was in its original motion to dismiss, is that the plaintiffs' amended complaint is deficient because their claims brought under state consumer protection laws "sound in fraud" and are subject to the heightened pleading standard of Rule 9(b). *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (Rule 9(b) applies to claims under California's consumer protection law that "sound in fraud"); *Haley v. Corcoran*, 659 F. Supp. 2d 714, 724, 724 n.10 (D. Md. 2009); *but see Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (New York's consumer protection law does not require heightened pleading under Rule 9(b) because the law "does not require proof of the same essential elements (such as reliance) as common-law fraud"). In order to meet the Rule 9(b) standard, the plaintiffs are required to allege the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Dwoskin*, 850 F. Supp. 2d at 569-70 (explaining the rationale for Rule 9(b)).

The plaintiffs have met this standard. Their amended complaint, like the original, "identifies two specific representations made by the Bank to the [plaintiffs] in [their approval letters], which the [plaintiffs] alleges the Bank knew were false." *Id.* at 570. First, the approval letter stated that the Bank would "waive or pay all fees for services or products required by [the Bank] in order to grant credit." (Am. Compl. ¶ 32). Second, the amended complaint alleges the omission of any indication, anywhere, that the Bank was placing LPMI on their loans. (*Id.* ¶ 36). As in the original complaint, the amended complaint also includes specific statements by bank officers that the plaintiffs allege were false. (*Id.* ¶¶ 28-29). The very fact that the Bank marketed a product called a "no fee" mortgage that the plaintiffs allege included a hidden, costly fee plausibly demonstrates a violation of the cited consumer protection laws. As stated in the court's

8

earlier memorandum, these allegations are "sufficient to put the Bank on notice of the allegations against it and allow it to prepare a defense." *Dwoskin*, 850 F. Supp. 2d at 570.

Beyond Rule 9(b), the plaintiffs have adequately pled the elements of each state law claim. As the Bank's own survey of the state consumer protection laws at issue demonstrates, the varying laws all prohibit the same types of unfair, fraudulent, or deceptive business practices, couched in slightly differing terms, and contain, applicable here, the same basic elements of (1) a consumer fraud or deception (2) that injured the plaintiff. (*See* Def.'s Mot. Dismiss. Mem., ECF No. 68-1, 26-39). As the court held in assessing the Dwoskins' Maryland Consumer Protection Act claim, the plaintiffs plausibly assert that the Bank misled them in the marketing, approval, and administration of their mortgages to their financial detriment. The Bank's alleged misrepresentations were of the kind that "a significant number of unsophisticated consumers would find . . . important in determining a course of action." *Green v. H & R Block, Inc.*, 735 A.2d 1039, 1059 (Md. 1999).[2] The plaintiffs also sufficiently allege that they were injured by the Bank's misrepresentations by unwittingly obtaining mortgages that were burdened by LPMI and by subsidizing the cost of the LPMI with higher interest rates paid to the Bank.[3] Thus, the

---

[2] *See also, e.g.*, *Bain v. Metro. Mortg. Group, Inc.*, 285 P.3d 34, 50 (Wash. 2012) ("Even accurate information may be deceptive if there is a representation, omission[,] or practice that is likely to mislead.") (citation and quotations omitted); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (Under New York law, "[d]eceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances.") (citation omitted); *Diversey Corp. v. Chem-Source Corp.*, 965 P.2d 332, 338 (N.M. App. 1998) ("The gravamen of an unfair trade practice is a misleading, false, or deceptive statement made knowingly in connection with the sale of goods or services") (citation omitted).

[3] *See, e.g.*, *Kwikset Corp. v. Superior Ct.*, 51 Cal.4th 310, 321 (Cal. 2011) (plaintiffs state a claim under California's consumer protection law only if they "had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices") (citations omitted); *Oliveira v. Amoco Oil Co.*, 776 N.E. 2d 151, 160 (Ill. 2002) ("[A] private cause of action brought under [Illinois's consumer protection law] requires proof that the

plaintiffs' state consumer protection law claims will not be dismissed.

### III. Unjust Enrichment

Finally, as the court noted in its memorandum opinion denying the Bank's first motion to dismiss, an unjust enrichment claim cannot stand "when a contract exists between the parties concerning the same subject matter" as the unjust enrichment claim. *Dwoskin*, 850 F. Supp. 2d at 573. Because Maryland courts recognize an express exception to this rule where there was fraud in the formation of the contract, the court declined to reach the question of whether the loan agreements between the plaintiffs and the Bank concerned the same "subject matter" as this claim because LPMI was expressly left out of those agreements. *Id.* While the various state laws governing this case may not all include this "fraud in the formation" exception to the general rule, each state appears to recognize unjust enrichment claims in some form where a contract does not govern the subject matter of the lawsuit. *See, e.g.*, *Compton v. Citibank (S.D.), N.A.*, 364 S.W.3d 415, 418-19 (Tex. App. 2012) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000)) (other citations omitted); *Arena Resources, Inc. v. OBO, Inc.*, 238 P.3d 357, 360-361 (N.M. App. 2010); *In re Graphics Processing Units Antitrust Lit.*, 527 F. Supp. 2d 1011, 1029 (N.D. Cal. 2007) (acknowledging that California courts disagree on whether an unjust enrichment claim can stand as a separate cause of action). Because the plaintiffs will proceed with both their HPA and consumer protection law claims, the court will not make a determination at this time as to the scope of the loan agreements and whether they fit within the scope of an unjust enrichment claim in each state. Accordingly, the Bank's motion to dismiss the

---

damage occurred 'as a result of' the deceptive act or practice.") (citation omitted).

plaintiffs' unjust enrichment claims will be denied without prejudice.[4]

## CONCLUSION

For the reasons stated above, the Bank's motion to amend the court's March 26, 2012,

order will be denied and the Bank's motion to dismiss will be granted in part and denied in part.

The plaintiffs' HPA and state law claims will proceed with the exception of the Augustsons',

Kiels', and Prossers' state law claims and the Woods' Arizona Consumer Fraud Act claim.[5]

A separate order follows.


January 31, 2013                                          /s/
      Date                                          Catherine C. Blake
                                    United States District Judge

---

[4] Of course, the diversity of applicable unjust enrichment law in this case (including potential differences of law regarding the scope of the mortgage agreements, the validity of contracts induced by misrepresentations or material omissions, and the correct measure of a "benefit conferred") will need to be considered in assessing the appropriateness of class certification, as will the divergent aspects of state consumer fraud law. The requirements of Rule 23, obviously, differ from the requirements of Rule 12(b)(6).
[5] Because their claims will go forward, the plaintiffs' count seeking an injunction also will not be dismissed.