IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTHEW DWOSKIN, *et al.* :
:
:
v. : Civil No. CCB-11-1109
:
:
BANK OF AMERICA, N.A. :
:

## MEMORANDUM

Now pending before the court is the plaintiffs' motion for reconsideration of this court's order granting the defendant's motion for summary judgment and denying the plaintiffs' cross-motion for summary judgment. The motion has been fully briefed and no hearing is necessary to its resolution. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, the motion for reconsideration will be denied.

## BACKGROUND[1]

The plaintiffs obtained "no fee" fixed-rate mortgages through defendant Bank of America, N.A. ("the Bank") and its No Fee Mortgage Plus ("NFMP") program. They claim the Bank violated disclosure provisions of the Homeowners Protection Act of 1998, 12 U.S.C. §§ 4901–4910 ("the HPA"), by purchasing mortgage insurance on their loans without their knowledge or consent. The HPA regulates the use and termination of lender paid mortgage insurance ("LPMI"), which is "private mortgage insurance that is required in connection with a residential mortgage transaction, payments for which are made by a person other than the borrower." 12 U.S.C. § 4905(a)(2). Where LPMI "is required in connection with a residential mortgage transaction," the HPA mandates that lenders make certain written disclosures to

---

[1] The court extensively reviewed the background of this case in the memorandum accompanying the court's order on September 30, 2015. (*See* Mem. 1-8, ECF No. 138.)

1

borrowers, and that the disclosures be made "not later than the date on which a loan commitment is made." 12 U.S.C. § 4905(c). These disclosures include the facts that LPMI "may not be canceled by the mortgagor," and that LPMI usually causes a mortgage interest rate to be higher than that of a mortgage with borrower paid mortgage insurance. *Id*. It is undisputed that the Bank purchased post-closing mortgage insurance for the plaintiffs' loans and did not disclose to the plaintiffs the information the HPA mandates a lender disclose when LPMI is required in connection with a residential mortgage transaction. The court previously granted the Bank's motion for summary judgment on the HPA claim after finding that the insurance placed on the plaintiffs' loans was not LPMI within the meaning of the HPA.

## ANALYSIS

Under Rule 59(e), there are "'three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *Sloas v. CSX Transp. Inc*., 616 F.3d 380, 385 n.2 (4th Cir. 2010) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993)). The plaintiffs asserts the third of these three objections, arguing that the court erred in interpreting and applying the HPA, and by granting the Bank's summary judgment motion before allowing the plaintiffs to conduct Rule 30(b)(1) depositions.

"The district court has considerable discretion in deciding whether to modify or amend a judgment." *Gagliano v. Reliance Standard Life Ins. Co*., 547 F.3d 230, 241 n.8 (4th Cir. 2008). A Rule 59(e) motion "may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co*., 148 F.3d 396, 403 (4th Cir. 1998). Generally, "reconsideration of a judgment

after its entry is an extraordinary remedy which should be used sparingly." *Id*. (citation and internal quotation marks omitted).

The plaintiffs argue that the court erred when it held that the HPA "applies to LPMI only if the lender had the intention at closing to place mortgage insurance on the loan and charged a higher interest rate to subsidize the cost of insurance." (Mem. Mot. Recon. 3, ECF No. 140-1.) But the court did not hold that the HPA only applies to LPMI in that circumstance; although intent at closing and an increased interest rate are relevant in determining whether LPMI falls within the meaning of the HPA, the court held that mortgage insurance also could be "required" under the HPA if the lender "otherwise conditioned issuance of the loan on obtaining LPMI for it." (Mem. 11, ECF No. 138.) The court based its interpretation of the HPA on the statute's legislative history and case law interpreting the meaning of "required" within the context of the HPA. The purpose of the HPA is to protect homeowners from paying for unneeded mortgage insurance because they are unable to cancel it. *See* S. REP. No. 105-129, at 3 (1997); *see also* H.R. REP. 105-55, at 6 (1997). Because the plaintiffs did not pay for the mortgage insurance, and their loans were not conditioned on the Bank's acquisition of mortgage insurance, they suffered no harm that the statute was designed to prevent. Additionally, important to the two federal cases interpreting "required" within the context of the HPA was the plausible allegation or stipulation of fact that the bank charged higher interest rates to offset or subsidize the cost of mortgage insurance. *Augustson v. Bank of America, N.A.*, 864 F. Supp. 2d 422, 426, 430 (E.D.N.C. 2012) (holding that the mortgagors stated a claim for violation of the HPA's disclosure requirements by alleging that the bank purchased mortgage insurance for the plaintiffs' loans without their knowledge or permission and charged them higher interest rates to subsidize the purchase); *O'Connor v. Wells Fargo Home Mortgage, Inc.*, No. 1:08-CV-0281-JEC, 2011 WL 248006, at *3-4 (N.D. Ga. Jan. 24, 2011)[2] (finding "an abundance of

---

[2] Unpublished cases are cited not as precedent but for the relevance and persuasiveness of their reasoning.

evidence" suggesting that the defendant bank "required" mortgage insurance where it was the bank's standard business practice to require mortgage insurance on all loans with a loan to value ratio greater than 80%, and the bank increased the interest rate on the plaintiff's loan to account for the insurance).[3]

In this case, the evidence demonstrates that the Bank paid for the mortgage insurance without increasing the borrowers' interest rates, and the Bank did not rescind NFMP loans that were ineligible for LPMI coverage. Because the Bank did not charge the plaintiffs higher interest rates to offset the cost of mortgage insurance, or otherwise condition issuance of loans on obtaining mortgage insurance, the insurance placed on the plaintiffs' loans was not "required" within the meaning of the HPA. Therefore, the post-closing mortgage insurance that the Bank bought and paid for was not LPMI as defined by the HPA, and the Bank was not required under the HPA to disclose the insurance to borrowers. The fact that the plaintiffs disagree with the court's interpretation of the statute is not a reason to grant the motion to reconsider. *See Tepeyac v. Montgomery Cty.*, 5 F. Supp. 3d 745, 770 (D. Md. 2014) ("A Rule 59(e) motion may not be used to relitigate old matters[.]") (citations and internal quotation marks omitted).

The plaintiffs also contend that the court prematurely granted summary judgment because the plaintiffs did not have the opportunity to gather evidence necessary to determine whether the Bank increased the interest rates on the plaintiffs' loans to account for the cost of insurance. The plaintiffs rely on their previously filed Rule 56(d) declaration in which their expert James Panepinto averred that the Bank's Rule 30(b)(6) deposition testimony does not "adequately address several important questions in this case." (*See* Panepinto Decl. ¶ 18, Pls.' Cross-Mot. Summ. J. Ex. A, ECF No. 130-2.) The plaintiffs had the opportunity to ask the additional

---

[3] I recognize but disagree with the plaintiffs' contention that this fact was not significant to the holdings in those cases.

questions Panepinto raised in his declaration, and "nonmovants do not qualify for Rule 56(d) protection where they had the opportunity to discover evidence but chose not to." *McCray v. Maryland Dep't of Transp.*, *Maryland Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014). They also seek to depose two non-management Bank employees to obtain evidence of an interest rate bump, but the emails those employees wrote do not mention mortgage insurance, and the plaintiffs admit that the employees attributed any "rate" increase to waived fees.

The court has a duty to limit discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative"; "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or where "the proposed discovery is outside the scope permitted by Rule 26(b)(1)," which requires discovery to be "proportional to the needs of the case," considering factors such as the amount in controversy and whether the burden or expense of discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 26(b)(1). The plaintiffs conducted four Rule 30(b)(6) depositions, received the Bank's answers to interrogatories, and had access to an extensive database of electronically stored information, all of which consistently indicate that the Bank did not increase interest rates to subsidize the cost of mortgage insurance. Because the plaintiffs have not shown that additional discovery would contradict the evidence already produced, nor have they demonstrated they suffered any injury from having mortgage placed on their loans, further discovery as to an interest rate bump would be disproportionate to the case's needs. *See Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008) ("discovery should be conducted so that its cost – to all parties – is proportional to what is at stake in the litigation").[4] Accordingly, the plaintiffs' motion for reconsideration will be denied.

---

[4] The plaintiffs do not dispute the Bank's assertion that it has already spent about $2 million responding to the plaintiffs' discovery demands.

A separate order follows.

<u>July 22, 2016</u>                                          <u>    /S/              </u>
Date                                                            Catherine C. Blake
                                                                 United States District Judge